# GARVEY TIRELLI & CUSHNER Ltd.

50 MAIN STREET, SUITE 390 • WHITE PLAINS, NEW YORK 10606
PHONE (914) 946-2200 • FAX (914) 946-1300 • www.GTCFirm.com

Lawrence A. Garvey*
Linda M. Tirelli**
Todd S. Cushner***
Irina Lust****
James Rufo****

*Admitted CT, NY, USDCT, SDNY and EDNY
**Admitted CT, USDCT, SDNY and EDNY
***Admitted NY, NJ, USDCT, SDNY and EDNY
****Admitted NY, SDNY and EDNY

January 6, 2017

Hon. Chief Judge Cecilia G Morris
United States Bankruptcy Court
355 Main Street
Poughkeepsie, NY 12601

**RE: 16-35001-cgm Maria Anderson and John Anderson**
**Loss Mitigation Status report**

Dear Honorable Judge Morris:

Please be advised that this firm continues to represent the above named Chapter 13 Debtors, Mr. and Mrs. Anderson.

Please accept this letter as a status report regarding the participation with court ordered loss mitigation program between the Debtors and Shellpoint Mortgage, a servicer.  At the last conference with the court on **December 13, 2016** the undersigned expressed concern because the creditor continued to ask for clarification about deposits made to the Debtor Husband's business account.  The Debtors had previously provided explanations for all deposits requested and the creditor came back wanting more explanations about deposits into the account.  The undersigned said on record that the explanation is simple, Mr. Anderson is a contractor and his clients pay him and said payments are deposited into his business account.  Your Honor directed the parties have a phone conference to discuss the necessity of explaining each deposit.

 **On December 14, 2016** the undersigned's paralegal provided explanations for the deposits requested and also provided dates of availability for a phone conference.  Opposing counsel's paralegal sent and email asking for dates to discuss "the denial".  The undersigned had no knowledge of a denial, as the day prior the servicer, Shellpoint, was seeking additional information.

**On December 16, 2016** opposing counsel John Accardi emailed a copy of a letter dated December 14, 2016 from Shellpoint saying the loan modification was denied.  Because this made no sense, the undersigned served a Notice of Error pursuant to 12 CFR Section 1024.35 on the servicer and copied its attorneys.  To date there has been no response to the Notice of Error which is required to be answered in full within 30 days.

**On December 20, 2016** the undersigned participated in a phone conference which was supposed to be discussing items requested for the loan modification application. The phone conference included a lady named Lauren Freeman who identified herself as a "Loss Mitigation Specialist" with Shellpoint. According to Ms Freeman, she had only been assigned to the file since November 29th 2016 and asked for the explanations on the business deposits because she hadn't read the whole record and was not aware of what was requested previously. She believed documents had gone stale as the fle was passed between prior loan modification specialists.

Apparently not happy with Ms Freeman's responses, Attorney Margaret Cascino of the Stern Eisenberg firm was immediately interruptive and tried to talk over and eve "for" the Shellpoint representative. Attorney Accardi also interrupted saying that he is not used to debtor's attorneys asking questions and that I should just turn over everything requested. The court should note the loss mitigation in this case commenced with the order entered on May 27, 2016. The Debtor has jumped through hoops to provide a pile of documents, letters of explanation and endless information as evidenced by the TEN (10) Debtor's Affidavits posted on the Court's ECF system

The undersigned insisted on hearing from the actual Shellpoint representative, Ms. Freeman who went on to say that the lawyer, Ms Cascino, instructed her on December 12, 2016 to stop reviewing the file and then instructed Ms. Freeman's supervisor, Mr. Rodney Mimms, to bypass underwriting and just make a decision. Ms. Freeman confirmed that Mr. Mimms is NOT an underwriter and that the Anderson file was never sent to underwriting. Mr. Mimms apparently arbitrarily decided the income and that it was insufficient. This is outrageous and mind boggling. *If not bad faith, what was the point of asking for documents to the point that the Debtor posted TEN (10) debtor's affidavits in 7 months if none of the information and documentation provided was going to be reviewed by an underwriter?*

The undersigned maintains that the servicer has a strict obligation to review the entire file and submit to underwriting for a full comprehensive review FOR ALL PROGRAMS available to the Debtor. The undersigned and Debtors do not agree with the assessment of the numbers nor do we agree that any NPV of the house was ever assessed as required by HAMP guidelines. This simply was not done.

The undersigned is serving a second Notice of Error on the servicer for not submitting the application to underwriting. The interference of the Stern Eisenberg firm with the process is astounding and is tantamount to bad faith. The raw data and analysis leading to denial by an underwriter must be provided by the servicer.

The undersigned is respectfully requesting an order to show cause be issued for Attorney Cascino and Mr. Rodney Mimms and Ms. Lauren Freemen of Shellpoint to come forth and provide a copy of the policy and to further explain the policy of the law firm dictating the bypassing of underwriting and denying a loan modification application without complete review of all documents submitted. In the alternative the undersigned requests a bad faith hearing and will bring a bad faith motion before this court seeking

legal fees and actual damages

Thank you for your time and attention. I remain

              Very truly yours,

              /s/ Linda M. Tirelli
              Debtors' Counsel